**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | |
|---|---|
| Dale Joseph Burke, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| North Dakota Department of Corrections ) | Case No. 1:12-cv-131 |
| and Rehabilitation, et al., ) | |
| ) | |
| Defendants. ) | |

## I. BACKGROUND

Plaintiff Dale Burke is presently incarcerated at the North Dakota State Penitentiary ("NDSP") in Bismarck, North Dakota. He initiated the above-entitled action on October 9, 2012, with the remission of the civil filing fee and the submission of a thirty-three page complaint setting forth sixty-one enumerated claims against nineteen defendants.

On October 15, 2012, Burke filed a document captioned "Supplemental Complaint" that sets forth an additional seven enumerated claims for relief that he claimed he had overlooked or that had not matured at the time of filing his initial complaint.

On October 25, 2012, Burke filed an "emergency motion," asserting that the NDSP's mail room had failed to copy/print his documents in a timely manner and further requesting that the court order the mail room to fulfill his copying and printing requests on the same day he submits such requests.

On December 17, 2012, Burke filed a Motion for Leave to File an Amended Complaint, to which he attached a proposed amended complaint containing one additional claim for relief. That

same day, he filed a Motion for Temporary Restraining Order, asserting that Defendants Todd and Barb Bailey have retaliated against him for initiating the above-entitled action.

On February 7, 2013, Burke filed a motion requesting that the United States Marshals Service be directed to serve his pleadings at defendants' expense because they failed to respond to his requests for waiver of service.

Judge Hovland has referred to the undersigned Burke's initial complaint for review pursuant to 28 U.S.C. § 1915A, as well as consideration of the pending motions.

## II. DISCUSSION

### A. Problems with Burke's pleadings

#### 1. Summary of Burke's initial complaint

There are few aspects of prison life with which Burke does not take issue. While Burke's thirty-one page, stream-of-consciousness complaint is not entirely clear, he appears to allege that one or more of the defendants: (1) denied him *timely* medical treatment; (2) were at times negligent in the provision and management of his medical treatment; (3) denied him medical care outright on several occasions in retaliation for filing grievances and otherwise exercising his constitutional rights; (4) denied him his prescription medications on multiple occasions; (5) prohibited him from using a cane to assist with his balance problems; (6) conspired with others to pressure a private medical provider to change his diagnosis so the NDSP would not have to provide treatment that its medical staff disagreed with; (7) prohibited him from accessing his medical records; (8) infringed upon his religious freedoms; (9) restricted his ability to file grievances; (10) opened legal and personal mail outside of his presence; (11) failed to accommodate his disabilities; (12) stripped him of his prison employment in retaliation for providing legal assistance to another inmate; (13) denied

2

him access to legal materials; (14) refused to store his legal materials; (15) restricted his access to the courts by removing typewriters from the law library, reducing the number of law clerks in the law library, prohibiting inmate-use of carbon paper, imposing arbitrary copying restrictions, charging too much for copies, and restricting inmate Lexis/Nexis access to regional databases; (16) fabricated a number of infractions against him in retaliation for his exercise of his constitutional rights; (17) damaged his property when conducting searches of his cell; (18) wrongfully deprived him of his job in the law library; (19) prevented him from retrofitting his analog television with a digital tuner; (20) fraudulently raised his cable rates; (21) failed to adequately address his complaints of poor cable reception; (22) retaliated against him for initiating the above-entitled action; (23) condoned staff's personal use of state property and receipt of personal calls while on duty, thereby placing inmates in imminent danger; (24) placed inmates in imminent danger by promoting an unqualified staffer to the position of safety enforcement officer; (25) allowed prison staff to make rules that under state law only the warden could make; (26) enacted a new grievance procedure that is unduly vague, restrictive, and not properly implemented; and (27) violated his state and federal constitutional rights in permitting his psychiatric records to be disclosed to prison staff. (Docket No. 2).

Burke names as defendants the North Dakota Department of Corrections and Rehabilitation ("NDDOCR"), which is a state agency responsible for North Dakota's corrections facilities, including the NDSP. In addition, Burke's complaint names eighteen individuals, fifteen of whom appear to be employees of the NDDOCR, who Burke sues in both their individual and official capacities. The remaining three are two doctors and one nurse who are privately employed or affiliated with what was Medcenter One and now has merged and become a part of Sanford Health.

3

In his prayer for relief, Burke requests an award of unspecified compensatory and punitive damages. In addition, he seeks injunctive relief requiring placement in a cell equipped with rails and other architectural safety devices, as well as other unspecified relief to cure the violations of law he claims.

### 2. Problems with Burke's initial complaint

#### a. Lack of specificity and vagueness

There are a number of problems with Burke's complaint. One is that it is impossible to tell from the complaint exactly who is being sued with respect to each of the individual claims. E.g., Brown v. Arkansas Dept. of Human Services, 452 Fed. Appx. 690, 692-93 (8th Cir. 2011) (unpublished *per curiam*) (citing Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir.1999) as requiring that a "§ 1983 complaint must allege facts supporting any individual defendant's personal involvement in or responsibility for alleged constitutional violations"). For example, with respect to the claims challenging his medical care, Burke specifies in some of the allegations the names of a particular doctor or nurse. However, it is not clear whether it is just that doctor or nurse that is being sued for the particular claims or whether Burke is suing others as well. The same holds true for most of the other claims that Burke is bringing, and, for some of the claims, no particular defendant is named and one is left to guess whether it is perhaps just the NDDOCR that is the target or whether other defendants are being sued as well.

Another problem is the failure of some of the claims to identify the legal basis for the claim. For example, for a number of the claims challenging the medical care being provided, it is not clear whether Burke is claiming an Eighth Amendment violation or simply that the care provided was negligent or otherwise inadequate under state law. Similarly, there are other claims that make reference only to state law and it is not clear whether those claims are limited to alleged violations

4

of state law or whether Burke is also claiming some constitutional violation.

While these deficiencies alone may not be enough to prevent at least some of Burke's claims from going forward at this stage, what is fatal now is the fact that Burke's shotgun, "kitchen-sink" complaint sues for too much. This is the result of Burke having violated the requirements governing the permissive joinder of defendants, which is addressed next.

### b. Improper joinder of defendants

Fed. R. Civ. P. 20, which governs the permissive joinder of parties, limits the persons who can be joined as defendants in a single action as follows:

> (2) Defendants. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Although Burke has the right under Fed. R. Civ. P. 18(a) to join in one action all claims that he may have against a particular person, he does not have the right to join in the same lawsuit numerous additional persons and sue them on disparate and unrelated claims. See, e.g., Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (stating that the district court should have rejected a prisoner's complaint that brought about a "hodgepodge of allegations" against fifteen named defendants, which the district court organized into seven claims with subparts, and the only thing connecting the claims was the prisoner's place of incarceration); Gillon v. Federal Bureau of Prisons, 424 Fed. Appx. 722, 725-26 (10th Cir. 2011) (unpublished); Sanchez v. Johnson, 275 F.3d 1080 (table), 2001 WL 1468049, at *1 (5th Cir. 2001) (unpublished *per curiam*) (court did not abuse its discretion in requiring a prisoner to file an amended complaint to address a misjoinder of defendants after the prisoner was "put . . . on notice that he would not be allowed to join in a single

5

lawsuit all of his claims from 1997 to 2000, against 25 separate defendants, arising out of 11 separate alleged categories of constitutional violations occurring at separate times and places."); Pruden v. SCI Camp Hill, 252 Fed. Appx. 436, 438 (3d Cir. 2007) (district court properly concluded that a complaint violated Fed. R. Civ. P. 20 where the complaint alleged multiple constitutional violations that occurred over a span of seven years arising out of different transactions and occurrences and noting also that the complaint failed in many instances to specify the defendant or defendants that committed the alleged violation).

In this case, Burke has misjoined a number of defendants in violation of Rule 20 based on what he has pled. For example, Burke makes claims against: (1) three private medical care providers for engaging in a conspiracy to deny him appropriate medical care; (2) defendant Bankston for allegedly interfering with the quality of his television reception and cable TV service; and (3) defendant Sullivan for allegedly denying his rights under the Americans with Disabilities Act ("ADA"). The only common factors in these claims are Burke and his place of incarceration. That is not enough. See id.; see also Solomon v. Carrasco, No. 1:11-cv-01511, 2012 WL 3744666, at **3-4 (E.D. Cal. Aug. 28, 2012); Golston v. Correct Care Solutions, No. 12-3046, 2012 WL 2119983, at **3-4 (D. Kan. June 11, 2012); Burgess v. Williams, No. 1:11CV316, 2011 WL 5290155, at **7-10 (M.D.N.C. Nov. 2, 2011); Moore v. Schuetzle, No. 1:06-cv-079, 2006 WL 3612857, at *11 (D.N.D. 2006).

Courts have expressed a number reasons why the limits on the permissive joinder of defendants should be vigorously enforced, particularly in this context. These include: (1) preventing actions from becoming unwieldy and unmanageable; (2) avoiding prejudice to individual defendants, including the additional time and expense that inevitably would result from having to

participate in a larger action involving unrelated claims and individual defendants being held hostage to the resolution of unrelated claims against others; (3) preventing plaintiffs from avoiding payment of the additional filing fees that would be required to sue unrelated defendants in separate actions; and (4) allowing prisoners to avoid the limitations imposed by the "three-strikes" requirements set forth in 28 U.S.C. § 1915(g). See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."); Golston v. Correct Care Solutions, 2012 WL 2119983, at **3-4 (avoids the "morass" that multiple claim, multiple defendant suits produce and prevents prisoners from "dodging" filing fee "three strikes" requirements); Moore v. Schuetzle, 2006 WL 3612857, at *11 (addressing the same reasons and noting the prejudice to defendants resulting from misjoinder).

With respect to the enforcement of Rule 20's requirements, Fed. R. Civ. P. 21 provides that a court can "on its own" and "at any time" address the problem of misjoinder. Consequently, as indicated by the authority cited above, the problem can be addressed now, even though defendants have yet to make an appearance. Also, it makes no difference that Burke has paid his filing fee and is not proceeding *in forma pauperis,* or that he is proceeding *pro se*, since Rule 20 does not distinguish between paid or unpaid complaints or grant special dispensation to those proceeding *pro se*.

In addressing the problem of misjoinder, there are several options the court can take under Rule 21, short of immediate dismissal of the action, which the Rule does not permit. One of the

options authorized by Rule 21 is to sever the claims against the misjoined parties. This was the option elected by this court in Moore v. Schuetzle, supra. In Moore, the court ordered the claims against the misjoined defendants be severed into two additional actions after giving plaintiff an opportunity to object. However, unlike this case, the Moore plaintiff had already qualified for *in forma pauperis* status and it was clear how the claims and defendants should be divided.

Another option might be for the court to dismiss without prejudice the defendants and associated claims it considers to have been misjoined. But, depending upon the situation, that could be somewhat arbitrary. Cf. Coles v. McNeely, No. 3:11-CV-130, 2011 WL 3703117, at **1,-4 (E.D. Va. Aug. 23, 2011) (court started with the first-named defendant in the body of the complaint and then dropped every defendant thereafter who was not properly joined after plaintiff was advised this is what the court would do if plaintiff failed to correct the misjoinder problem in an amended complaint).

Still another possibility is the approach taken by a number of courts which requires that plaintiff choose which claims will be pursued in the originally-filed action consistent with Rule 20's requirements. E.g., Sanchez v. Johnson, supra (concluding the district court had not erred in requiring an amended complaint); Pruden v. SCI Camp Hill, supra (same); Golston v. Correct Care Solutions, 2012 WL 2119983, at *4; Showalter v. Johnson, 2009 WL 1321694, at *5 (W.D. Va. 2009) (citing other cases requiring the same procedure). Under this approach, Burke would be directed to file an amended complaint that includes only defendants that have been properly joined. Then, if Burke wants to sue the excluded defendants, one or more additional actions must be brought.

There are several reasons why the latter course of action is the most appropriate for this case. First, it is not immediately obvious exactly how many defendants have been misjoined given the

8

lack of specificity in Burke's complaint as discussed earlier. Hence, the burden should be placed upon him to submit an amended complaint that complies with Rule 20 requirements. See, e.g., Golston v. Correct Care Solutions, 2012 WL 2119983 at *4 ("Because plaintiff's complaint is such a morass of unrelated multiple claims and defendants, the court has no idea which claim or claims should be severed and which properly joined claims the plaintiff may wish to continue to pursue in this action."). Second, there are no apparent statute-of-limitations issues that broker for severance over dismissal of the misjoined parties, at least for claims that could properly be brought in this court. See, e.g., Strandlund v. Hawley, 532 F.3d 741, 745-46 (8th Cir. 2008).[1] Third, as discussed later, a number of claims that Burke has pled may not to be actionable, and proceeding in this manner gives Burke the choice of how he wants to spend his money with respect to the filing fee he has already paid, *i.e.,* spend it on claims that may have a chance of surviving an initial screening under 28 U.S.C. § 1915A or spend it on claims that likely will be subject to immediate dismissal.[2] Fourth, requiring an amended complaint would allow Burke to cure the other deficiencies in his complaint as specified above.

        **c.**         **Deferral of § 1915A screening and claims that *may* be subject to immediate dismissal**

Because the recommendation here is that Burke be ordered to submit an amended complaint that complies with Rule 20's requirements and does not include improperly joined defendants and associated claims, the screening mandated by 28 U.S.C. § 1915A will be deferred until Burke

---

[1] If there are statute-of-limitations issues, Burke needs to point them out with specificity in an objection to this Report and Recommendation.

[2] The differences between severance and dismissal of a defendant without prejudice to the filing of a new, separate complaint are discussed in DirectTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006). If the court merely severed the misjoined claims into one or more separate actions, it is assumed the court could condition the severance on Burke paying filing fees for each of the new, severed actions. See Burgess v. Williams, 2011 WL 5290155, at *11. However, if not, this would be another reason for dismissal of the misjoined parties rather than severance.

9

complies with the order. That being said, and without any intention of being comprehensive in terms of the claims that may or may not be cognizable, it is highly questionable whether any claim submitted by Burke with respect to the following subject matters would survive a preliminary screening to the extent Burke seeks relief under § 1983 for alleged violations of his federal constitutional or statutory rights:

- The quality of Burke's television viewing experience and his cable TV service. See Solomon v. Carrasco, 2012 WL 3744666, at * 5 (claim that plaintiff was not allowed to watch television or participate in a weekly movie night did not state a cognizable Eighth Amendment claim); Rawls v. Sundquist, 929 F. Supp. 284, 288-89 (M.D. Tenn. 1996) ("There is no constitutional right to television while incarcerated. . . . Without such an underlying right, it follows with even stronger reason that there is no constitutional right to satellite/cable equipment for a television."); Temple v. Dahm, 905 F.Supp. 670, 674 (D. Neb. 1995) ("Plaintiff has no right to view television as arising from the Constitution."); Montana v. Commissioners Court, 659 F.2d 19, 23 (5th Cir. 1981); Murphy v. Walker, 51 F.3d 714, 718, n. 8 (7th Cir. 1995); Glasshofer v. Jeffes, CIV. A. No. 87-478, 1989 WL 95360 at *2 (E.D.Pa. Aug. 10, 1989) aff'd, 897 F.2d 521 (3d Cir. 1990) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates."); Lester v. Clymer, CIV. A. No. 89-4287, 1989 WL 66621 at *2 (E.D.Pa. June 19, 1989) ("While it is not a subject of frequent litigation, it is nevertheless established that prisoners have no constitutional right to television.").

- Inadequacy of NDSP's disciplinary and grievance processes. See Grigsby v.

Hubert, No. CIV S-09-1067, 2009 WL 1861172, at *1 (E.D. Cal. June 29, 2009) ("Prisoners have no standalone due process rights related to the administrative grievance process.") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) and Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); see also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by the prisoner); Dickens v. Taylor, 464 F. Supp. 2d 341, 353 (D. Del. 2006) (concluding that a prisoner "cannot maintain constitutional claims based upon an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed.").

- <u>Inadequate or untimely medical care that does not amount to an Eighth Amendment violation</u>. The federal constitutional obligation to provide medical care to prisoners is governed by the Eighth and Fourteenth Amendments. See, Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002). In Jolly v. Knudsen, the Eighth Circuit described the extent of this duty and what is required to prove a breach as follows:

> Prison officials or their agents violate the eighth amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Our court has interpreted this standard as including both an objective and a subjective component: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "**The prisoner must show more than negligence, more even**

11

> **than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.**"
> Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

205 F.3d 1094, 1096 (8th Cir. 2000) (emphasis added).[3]

- <u>Conclusory allegations of interference with legal mail</u>. Simply alleging that "legal mail" was interfered with is not enough. The details of the alleged interference must be pled along with a description of the type of mail involved, since these facts are material to whether there is a constitutional violation that is actionable, as opposed to simply a violation of the NDSP's mail policies, that is not - at least not in federal court. See, e.g., Moore v. Bertsch, No. 1:09-cv-027, 2009 WL 2150966, at *7 (D.N.D. July 13, 2009) (incoming letter from the state Department of Labor was not "legal mail" that had to be opened in prisoner's presence in order to preserve attorney-client confidences); Moore v. Hoeven, No. 1:08-cv-028, 2008 WL 1902451, at **9-12 (D.N.D. April 28, 2008) (failure to open mail from an innocence project, a school of law, the Federal Circuit Court of Appeals, and this court in the presence of the prisoner did not result in a constitutional violation because the mail did not contain attorney-client privileged information).

In addition, Burke is advised that the State of North Dakota (including its agencies and instrumentalities, *e.g.*, the NDDOCR) has Eleventh Amendment immunity from suit, except to the

---

[3] "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotations omitted). Finally, to make out a claim for a constitutional violation under 42 U.S.C. § 1983, a plaintiff must demonstrate that he suffered an actual or imminent injury in fact. Smith v. Ark. Dep't of Corr., 103 F.3d 637, 643 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343 (1996); see also Madison-Bey v. Corr. Med. Serv., 180 Fed. App'x 608, 609 (8th Cir. 2006) (holding § 1983 complaint failed because plaintiff did not allege that he suffered harm as a result of an unconstitutional policy or custom).

extent that the immunity has been waived or abrogated by Congress. E.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) ("Pennhurst"). Further, the waiver must specifically extend to waiver from suit in federal court. Id. at n.9. In other words, the fact the State may have waived its immunity and allows suit to be brought against it in state court does not mean the State has waived its immunity from suit in federal court. In fact, for claims of negligence, the State has expressly preserved its immunity from suit in federal court in the chapter under North Dakota law where the State has consented to suit in state court for various tort claims. See Ungar v. North Dakota State University, No. 3:06-cv-108, 2007 WL 3543659, at *3 (D.N.D. Nov. 7, 2007); N.D.C.C. § 32-12.2-10. Finally, the doctrine recognized in Ex Parte Young, 209 U.S. 123 (1908), which permits suits in federal court for prospective injunctive relief against individual state officers or employees, applies only to violations of federal constitutional rights and law and not to state-law violations. To enforce state-law requirements, suit must be brought in state court. E.g., Virginia Office for Protection and Advocacy v. Stewart, __ U.S. __, 131 S.Ct. 1632, 1637-38 (2011); Pennhurst, 465 U.S. at 103-06.

Finally, the court will not allow a suit against an individual defendant to go forward at all, or with respect to any particular claim, unless the pleading sufficiently alleges what the involvement of that person was.

### 3. Burke's "Supplemental Complaint"

Burke filed a "Supplemental Complaint" on October 15, 2012, alleging: (1) he was denied proper pain medication following a recent hernia surgery; (2) placed in an unsafe and inadequate bed in the prison infirmary; (3) refused timely medical treatment for a painful boil; (4) defendant prison personnel engage in unsafe and unsanitary practices that contributes to the spread of MRSA throughout the NDSP and has caused him to be infected on multiple occasions; (5) failure to

schedule him for an MRI at a local medical provider using a larger machine than the one available at the NDSP; (6) denial of medical treatment for alleged PTSD resulting from scheduling him for an MRI using the equipment at the NDSP; and (7) interference with his right to access the courts by not providing timely copying service for his pleadings and violating his rights under the ADA by deliberately imposing impediments upon his court filings knowing that it adversely impacts his mental health. In his prayer for relief, Burke requests that the court order that the NDDOCR/NDSP be forced to comply with standards set by the Center for Disease Control for institutional sanitation and prevention of the spread of infectious diseases, that the NDDOCR/NDSP be ordered to provide prisoners on a daily basis printing and access to their legal documents, and that the court grant other relief as deemed appropriate.

Again, in this pleading, Burke did not identify specifically which defendants he intends to sue on the new claims, although in some of the allegations he mentions names of persons he claims acted inappropriately without saying whether relief was being sought from them, and, if so, what relief. Also, Burke did not identify for all of the claims whether he was suing in a particular claim for a federal constitutional violation or simply to enforce state law. Finally, the new claims alleged in the Supplemental Complaint compound the Rule 20 misjoinder of defendants problems - particularly, but not exclusively, the MRSA allegations.

Burke was entitled to amend his initial complaint once as a matter of course within the time periods specified under Fed. R. Civ. P. 15(a) without obtaining court approval. While Burke acted within that time frame, he failed to prepare a new amended complaint, *i.e.*, a pleading containing both the original and the new claims, and instead submitted the pleading entitled "Supplemental

Complaint" setting forth only the new claims.[4]  While, in some instances, this court has ordered that the clerk copy such a pleading, attach it to a copy of the original complaint, and then file the appended documents as an amended complaint, the court should not do so here given the problems with Burke's initial complaint, which are not cured by the supplemental pleading, but rather are compounded by it.  Also, Burke has since filed a motion to amend his complaint to add yet additional claims.  This is even more reason for requiring that all claims be reduced to a single amended complaint, insofar as it can be done and meet Rule 20's limitations on joinder of defendants, and that separate actions be commenced to the extent necessary to comply with Rule 20.

### 4. Burke's motion to amend (Doc. No. 12) and proposed amended complaint

On December 17, 2012, Burke filed a motion to amend his complaint.  The proposed amended complaint that he submitted did not restate all of the claims set forth in his initial complaint or "supplemental complaint."  Rather, it only includes the new claims that he desires to add.

The new proposed complaint alleges that Todd Bailey harassed and made fun of Burke's suffering from Tourette's syndrome.  Todd Bailey was not named in the initial complaint.  Burke goes on to allege that Todd Bailey has conspired with Barb Bailey to harass him for bringing the original complaint against Barb Bailey and that the two of them have further conspired with Lieutenant MacGarvey and Steve Heit, who are not named defendants in the initial complaint, to cover up the harassment and deprive Burke of his rights to equal protection and due process of law.

Notably, Burke does not state what relief he seeks on account of these new allegations, but

---

[4] Fed. R. Civ. P. 15(d) also permits supplemental pleadings.  However, unlike an amended complaint, which may be filed without leave of court if it is done within the time period provided under Rule 15(a), Burke can only bring a supplemental pleading when permitted by the court upon motion and reasonable notice to the other parties.  This Burke has not done.

15

it may be that he intends to seek damages based on that request in his initial complaint. Further, he does not specify which of these defendants he is seeking relief from with regard to these particular allegations. Finally, he does not specifically request that Todd Bailey be joined as an additional party defendant if that is what he intends.

Given the problems with Burke's prior pleadings and the fact that the new allegations simply compound the Rule 20 misjoinder problems, it is recommended that this motion to amend be denied without prejudice. To the extent that Burke wants to sue regarding these matters and believes he has a claim, he will have to include it in the amended complaint or subsequent complaints, consistent with Rule 20 requirements.

### B. Burke's other pending motions

#### 1. Burke's emergency motion for court order (Doc. No. 8)

On October 25, 2012, Burke filed an "Emergency Motion for Court Order." He reiterates his claims regarding court access, to wit: he complains that defendants are hindering his ability to access the courts by removing typewriters and carbon paper from the law library and imposing arbitrary copying restrictions. He requests the issuance of an order directing plaintiffs to give him unfettered access to the courts.

It is doubtful that Burke's initial complaint set forth a cognizable claim for denial of access to the courts. But, in any event, the pleading and his other interaction with the court as evidenced by the docket sheet suggest that Burke's ability to prosecute this action has not been unduly impeded and that he has not been denied access to the court. It is recommended that this motion be denied.

#### 2. Burke's motion for a temporary restraining order (Doc. No. 13)

On December 17, 2012, Burke filed a motion for temporary restraining order. He avers that defendant Barb Bailey and her husband Todd Bailey, who may or may not be a defendant, have

16

retaliated against him for initiating the above-entitled action by giving him dirty looks, making derogatory comments about him, and making light of the fact that he suffers from Tourette's Syndrome. He further avers that he was threatened by Todd Bailey when he attempted to informally resolve this matter and that his subsequent grievance was essentially ignored by staff.

In determining whether a temporary restraining order should be issued, the court must look to the specific facts shown by affidavits to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in Dataphase Sys. Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. Dataphase Systems, Inc. v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir. 1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed. 2d 861 (1994).

Pottgen v. Mo. State High Sch. Activities Assoc., 40 F.3d 926, 928-29 (8th Cir. 1994).

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Electric Co-op, 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court must proceed with the utmost care and must recognize the unique nature of the prison setting.

17

See Kendrick v. Bland, 740 F.2d 432, 438 n.3 (6th Cir. 1984).

A review of the materials of record fails to establish a substantial likelihood of success with respect to Burke's claim that he was subjected to retaliation for the initiation of the above-entitled action. Morever, it is questionable whether the relief he seeks in the current motion has a sufficient relation to the underlying civil rights action so as to justify injunctive relief. Finally, Burke has failed to establish that he will suffer irreparable harm absent injunctive relief.

Burke's motion for a temporary restraining order should therefore be denied. As an aside, it should be noted that defendants are already obligated under law not to take any retaliatory action against any prisoner who exercises his constitutional rights.

### 3. Burke's motion for Marshal service of process

On February 7, 2013, Burke filed a motion requesting that the court order the Marshal Service to serve his pleadings. Normally, the responsibility for service of process falls upon the plaintiff under Fed. R. Civ. P. 4(c)(1), except when the plaintiff is proceeding *in forma pauperis* in which case court personnel are required to arrange for service. Id.; 28 U.S.C.A. § 1915(d); see Henderson v. United States, 517 U.S. 654, 662 (1996) ("Rule 4 changes made operative in 1983 completed a shift in responsibility for service from the United States marshals to the plaintiff."). In this case, Burke tendered the filing fee of $350 with his complaint and has not submitted the financial information required by 28 U.S.C.A. § 1915(a)(1)-(2) to qualify for *in forma pauperis* status. Consequently, the court is not required to arrange for service of process.

The court, however, has the discretion under Fed. R. Civ. P. 4(c)(3) to order the Marshal to make service. Koger v. Bryan, 523 F.3d 789, 803 (7th Cir. 2008). In this case, the recommendation is that Burke's request be held in abeyance pending his submission of an amended complaint that complies with Rule 20's limitations on joinder of defendants because of the problems with his

present pleadings as discussed above. Further, it is recommended that any request for Marshal service not be granted until the court has screened the amended complaint pursuant 28 U.S.C. § 1915A, because it may be that the court may not permit certain of the claims to go forward.

## III. RECOMMENDATION

Based on the foregoing, it is hereby **RECOMMENDED** as followings:

1. Burke be directed to file an amended complaint within thirty days that includes only those persons as defendants, along with associated claims, that complies with the limitations upon joinder of defendants set forth of Fed. R. Civ. P. 20 and that defendants previously named, but not named in the amended complaint, be dismissed without prejudice.

2. The motion to amend at Doc. No. 12, the emergency motion at Doc. No. 8, and the motion for temporary restraining order at Doc. No. 13 all be denied.

3. The motion for Marshal service of process at Doc. No. 19 be held in abeyance.

4. The court advise Burke that the failure to file an amended complaint complying with Rule 20's requirements may result in a dismissal of his entire action without prejudice for failure to comply with the court's order.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 28th day of February, 2013.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court