# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# SOUTHWESTERN DIVISION

| | |
|---|---|
| Dale Joseph Burke, | ) |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| vs. | ) |
| | ) |
| North Dakota Department of Corrections | ) |
| and Rehabilitation, et. al., | ) Case No. 1:12-cv-131 |
| | ) |
| Defendants. | ) |

Before the court is a "Motion for Preliminary Injunction" filed by the plaintiff, an inmate at the North Dakota State Penitentiary ("NDSP"), on February 12, 2014. Judge Hovland has referred the motion to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that the motion be denied.

## I. BACKGROUND

Burke suffers from acid reflux disease, for which he has been prescribed omeprazole,[1] and sleep apnea, for which he uses a CPAP and/or BiPAP machine.[2] His omeprazole prescription expired on January 14, 2014, but was renewed on February 4, 2014.

On February 12, 2014, he filed a "Motion for Preliminary Injunction," asserting that, in retaliation for initiating the above-captioned action, defendants had initially refused to refill his

---

[1] Omeprazole is a proton pump inhibitors used to treat the symptoms of gastroesophageal reflux disease. <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693050.html> It is available by prescription and over-the-counter under various brand names, e.g., Prilosec and Zegerid. Id.

[2] A Continuous Positive Airway Pressure (CPAP) machine uses steady air pressure to keep a person's airways open while they sleep. <https://www.nhlbi.nih.gov/health/health-topics/topics/cpap> A Biphasic Positive Airway Pressure (BiPAP) machine functions similarly to a CPAP machine, the primary difference being that it has two pressures that it alternates between. <http://www.ncbi.nlm.nih.gov/pubmed/8143712>. It is not entirely clear which machine Burke uses as he makes reference to both in his motion.

1

omeprazole prescription and in so doing set into motion a chain of events that resulted in his aspiration of gastric fluids while he was asleep on February 2, 2014. He requests the following relief: (1) the issuance of a "preliminary injunction ordering defendants to maintain the status quo of plaintiff's medical treatment and that any medical treatment or medication ordered for said treatment should be maintained as the doctors ordered it;"[3] (2) a hearing; (3) a review of his medical records; and (4) the issuance of an order requiring defendants to treat all of his serious medical conditions. (Docket No. 59)

On February 26, 2014, defendants filed a response in opposition to Burke's motion. They assert that the motion is moot by virtue of the fact that Burke was prescribed and received omeprazole on February 4, 2014. They further assert that the balance of factors that the court must consider before granting injunctive relief do not weigh in Burke's favor and that Burke's motion must be denied as a consequence.

On March 6, 2014, Burke file a reply to defendants' response, reiterating his claims that defendants had retaliated against him and otherwise exhibited deliberate indifference to his serious medical condition by initially refusing to renew his omeprazole prescription. His motion has now been fully briefed and is ripe for the court's consideration.

## II. DISCUSSION

When deciding whether to grant an inmate preliminary injunctive relief, a court must consider (1) the threat of irreparable harm to the inmate; (2) the balance between the harm to the inmate and the harm that granting the injunction will inflict on the nonmoving party; (3) the probability that the inmate will succeed on the merits; and (4) the public interest. Goff v. Harper, 60 F.3d 518, 520 (8th Cir.

---

[3]The court presumes that the doctor-ordered treatment to which he refers is the recommendation that he apparently received from his pulmonologist to take medication to prevent acid reflux. See Docket No. 59-1.

2

1995). The moving party has the burden of proving an injunction should issue. Id.

## A. Irreparable Harm

Burke asserts that defendants have been deliberately indifferent to his serious medical needs to the extent they refused to renew his prescription for omeprazole, which he considers to be life sustaining drug, in late January 2014 and that he stands to suffer irreparable harm should the court not grant him injunctive relief and ensure that he has access to it in perpetuity. In so doing, he explains that "if [he] does not take a medication to prevent acid reflux, the acid reflux will rise up out of [his] digestive system into [his] mouth and be blow by the positive air of the BiPAP machine into [his] lungs, this is called aspiration of gastric fluids and [he] can drown in his own vomit/reflux and die, sustain lung injuries, incur pneumonia." (Docket No. 59).

Defendants are dismissive of Burke's assertion that omeprazole is a life sustaining drug and that he stands to suffer irreparable harm absent the issuance of a preliminary injunction. First, they stress that Burke's prescription for omeprazole was renewed on February 4, 2014. Second, they advise that an over-the-counter form of omeprazole is available for purchase by Burke at the NDSP's commissary should he ever need it.[4]

A plaintiff seeking a preliminary injunction must show that irreparable injury is "likely" in the absence of an injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986). Bare allegations are not sufficient to establish the threat of irreparable harm. Packard Elevator, 782 F.2d at 115. A plaintiff seeking an injunction must show that harm has occurred in the past and is likely to occur again or that harm is certain to

---

[4]In a supporting affidavit filed by defendants, Dr. Hagan attested: "Omeprazole is not a lifesaving or life sustaining medication. It does not require a prescription. Inmates can purchase omeprazole over the counter in the commissary. At times, however, I prescribe this medication to an inmate and it will be filled through the DOCR pharmacy." (Docket No. 63-1).

3

occur in the near future. Id.

Here, Burke has failed to demonstrate the likelihood of irreparable injury absent court action. Burke's omeprazole prescription has been renewed. Should his prescription ever lapse again, he can purchase Prilosec OTC, an over-the-counter form of omeprazole, to tide him over.[5] Consequently, he has not demonstrated the likelihood of any harm going forward.

### B. Balance of Harms

The balance of harms also weighs in defendants favor. As discussed above, Burke has failed demonstrate that he stands to suffer irreparable harm should his motion be denied. Conversely, Dr. Hagan, the physician at the NDSP from whom Burke obtained his omeprazole prescription, does stand to be adversely affected if the motion is granted as it would require that he violate his professional obligations and act contrary to his medical judgment. To grant the motion would be to require Dr. Hagan to issue/renew prescriptions demanded by the patient in perpetuity without first evaluating his patient, something that the court is not prepared to do.

### C. Probability of Success on the Merits

Having reviewed the parties submissions, the court concludes there is little likelihood that Burke would be able to succeed with claims of retaliation or deliberate indifference stemming from delays in obtaining a renewal of his omeprazole prescription.

---

[5] Two things are worth noting. First, Burke had more than enough money in his inmate spending account to purchase the Prilosec at the NDSP's commissary. In a supporting affidavit filed by defendants, Deputy Warden Steve Foster attestted: (1) the NDSP commissary sells 14-count packages of Prilosec OTC for $13.83; and (2) the balance of Burke's inmate spending account was $41.21 as of January 15, 2014, and $43.26 as of February 3, 2014. (Docket No. 63-12). Second, it appears that Burke knew that Prilosec OTC was available for purchase in the NDSP's commissary but chose not to purchase it on principle. (Docket No. 63-10). Following one of Burke's sick calls, a nurse practitioner made the following notation: "[Burke] states that he did not purchase medication off of commissary as he feels medication is medically required due to his cpap machine and that medical needs to provide it for him." (Id.).

This begs the question: if Burke truly considered omeprazole to be a life sustaining drug and that he could die if his access to it was interrupted, why would he risk his life over $13.83 and refuse to purchase it from the commissary until the issue regarding his prescription could be resolved.

The following facts are not in dispute. Burke was prescribed omeprazole on January 31, 2013. (Docket No. 63-1, ¶ 3). The prescription expired on January 25, 2014, but was renewed ten days later on February 4, 2014. (Docket Nos. 59-1, 63-1, 63-8, and 63-11). Records submitted by Burke and defendants evince that, in the interim, Burke reported to sick call twice on October 20, 2013, with complaints of abdominal and chest pain. (Docket No. 59-1, 63-2, and 63-3). On October 21, 2013, he was evaluated by a physician's assistant, who prescribed him sucralfate[6] and scheduled him for an Upper Gastrointestinal test (Upper GI). (Docket Nos. 59-1 and 63-4). On December 16, 2013, Burke was summoned to the NDSP's infirmary for the Upper GI. (Docket No. 59-1 and 63-5). However, he refused to submit to the test. (Docket Nos. 59-1, 63-5, and 63-5). On December 17, 2014, Dr. Hagan sent the following note to Burke:

> Dale -
>
> I was disappointed to find that you have chosen not to participate in further evaluation of abdominal pain. The upper GI that you chose not to participate in was scheduled 6 weeks after the beginning of your medication in order to test for the existence of any persistent ulcers of the stomach or duodenum after therapy with your medication. Without this test, this question will remain unanswered. Your lab work showed no evidence of gastric infection that would cause persistent ulcers. Your blood tests were unremarkable, except for an elevation of your blood glucose, which has been noted before.
>
> In honoring your decision not to participate further, your follow up appointment to discuss the results of your x-ray test has been cancelled. Your medication will expire in a few days, as per the initial treatment plan. If you do have recurrence of abdominal pain please place a slip to be seen in sick call for evaluation.
>
> Dr. Hagan

(Docket No. 63-7).

On January 20, 2014, Burke submitted a sick call to medical requesting that his omeprazole

---

[6] Sucralfate is a drug indicated for the treatment and of duodenal ulcers. <http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681049.html>

5

prescription be renewed. (Docket Nos. 59-1 and 68-1). On February 2 and 3, 2014, he submitted emergency sick calls to again request a renewal of his prescription. (Id.). A nurse practitioner responded to one of these sick call, advising: "Your prescription has expired and pharmacy cannot refill a medication without a new order from the medical providers. Your chart shows that a memo was sent to you on 12/17/2013 that stated your medications will expire and if you have recurrence of abdominal pain you need to place a sick call slip to medical. If you have any question in regards to this let us know. If the provider decides to continue the omeprazole we will get the medication dispensed as soon as possible." (Docket No. 63-8).

On February 4, 2014, Burke was examined by Dr. Hagan, who: (1) advised that he had wanted to see Burke for a reevaluation before issuing any new prescriptions; and (2) proceeded to renew Burke's prescription. (Docket Nos. 59-1 and 63-1).

Burke's assertion that defendants retaliated against him and otherwise exhibited deliberate indifference to his medical needs strain credibility when one considers that he has been able to treat with a pulmonologist, was prescribed omeprazole in the first instance by Dr. Hagan, was examined on multiple occasions by nurses and physician's assistants, was given an additional prescription for sulcrafate,[7] offered an Upper GI (to which he refused to submit), reminded that his prescriptions were expiring, and encouraged by staff to return for additional testing should he have a reoccurrence of his abdominal pain.

Dr. Hagan advised Burke that he would have to for a reevaluation before his prescription would be reissued. There could arguably have been some confusion between Burke and NDSP staff as to what prescription Dr. Hagan was referring–the sulcrafate, the omeprazole, or both. Nevertheless,

---

[7]According to nursing notes, Burke reported that he was feeling much better and no longer experiencing abdominal pain after taking the sucralfate. (Docket No. 63-10).

the court cannot overlook that Burke did not seek out Dr. Hagan until February 4, 2014. The fact that Dr. Hagan promptly met with Burke on February 4 and agreed to issue Burke a new prescription (which presumably was filled that same day) further belies Burke's claims of retaliation and deliberate indifference.

### D. Public Interest

As for the final factor, it too weighs in defendants' favor. As discuss above, the relief sought by Burke–the requirement that Dr. Hagan issue him a prescription on demand and without the benefit of a followup examination–would force Dr. Hagan to violate his professional obligations and act contrary to his medical judgment. Forcing a physician to act contrary to his professional judgment and the established standard of care is not in anyone's interest. Inmates deserve to be evaluated before being prescribed medication.

### III. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the court **DENY** Burke's "Motion for Preliminary Injunction" (Docket No. 59).

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 18th day of March, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr.
United States Magistrate Judge